Appeal Numbers 24-1392, 1393, 1394, 1395, and 1960, Tischauser v. Mode Transportation, LLC, et al. I'll give you time to get settled. May I ask, why don't the counsel for this appeal is in your... We have counsel remotely on the video, yes. If you look up there at the screen, you can see him. Good morning. Good morning. You have given us your proposed breakdown of how you want this appeal argued up. Mr. Tooney, you're first on behalf of the appellants. You have six minutes, and then Mr. Lesbrance, you're on the video here. You go second with two minutes. So, Mr. Tooney, I'm going to start with you. Whenever you're ready, come up to the podium, please, and we will give you six minutes, saving two for rebuttal, so watch your time. Mr. Tooney, are you ready, sir? Come on up to the podium, please. That's what we call an ace argument. I misunderstood. I'm sorry. Ace will argue first for the defendants. So, I'm following the order that you gave us. Good morning. Good morning, and thank you for your patience with me. Forty years ago when I came here, I didn't have Google Maps, and it didn't help me today either. And I will note that Mr. Lesbrance is on the phone, on the video, so go ahead, please. Thank you, Your Honor. As you've seen through the brief that we filed, we are here to ask the court to reverse itself from the E decision. We are aware that there's a high mark that we have to achieve to justify that. I think we have that. The Hively case indicated that adjusting your jurisprudence to be in coordination with what the Supreme Court is saying was the reason justified for using Hively to change the jurisprudence of this court. We think that same formula works here in that all of the cases by the Supreme Court dealing with exceptions to making exceptions under the historic police powers of the states to having rights or claims wiped out. All of those, none of those cases was discussed in Yee. I think the problem that happened in Yee was citing Puerto Rico, which in one sentence stated that when there was an express preemption clause, the court should look to the language of the statute to interpret it. So we reaffirmed Yee in Montgomery and declined to revisit it, and I know there's a circuit split right now, and I think you would agree that the Supreme Court has never addressed the precise preemption issue before the court today, and that was before the court in Yee. They have not addressed it like this, although they've discussed it. There are two cert petitions pending before the Supreme Court now, one in our Montgomery case and one in the Sixth Circuit's recent decision in Cox, which came out the other way from us in Yee. Is there any reason that this court should hold off deciding your case until we get the guidance from the Supreme Court or see if they're going to take the cases? I would argue yes, this court should enter its ruling simply because... So wait, the yes to my question was a little different. I want to make sure you understand the question. My question for you is, should we wait for the Supreme Court to see if they're going to grant the cert petitions, and if they do, wait to see how they come out, or should we just decide this case? I think we should just decide it. Why? I think it would be better for this court to correct what I think was a terrible error rather than have it do it on reversal by the Supreme Court. The decisions of the Supreme Court never came up in Yee. I think that what happened with that one sentence in Puerto Rico saying that you should simply analyze the language of the statute at issue. Puerto Rico did not discuss and did not even attempt to analyze why it should reverse anything in the jurisprudence concerning the police powers of the state being protected. The police powers of the state were not involved in Puerto Rico, which I imagine is the reason for the way they wrote that decision. But it's not as if the jurisprudence of the Supreme Court had stopped less than two years after the last case decided by the Supreme Court where they used that power to say that the police powers of the state were to be garnered. If you assume we don't overrule Yee, there are some distinguishing facts here. You have a shipper that wasn't present in Yee. You have some claims that weren't precisely addressed in Yee. If we don't overrule Yee, where does that leave us on affirming the motion to dismiss? If you do not overrule? Correct. Well, I guess then we'll be looking to see what the Supreme Court does on these other cases. They've denied cert so far, I think, five times on this issue. I think perhaps the Cox case will be a reason why they finally decide they want to take it. My question's a little different. Assume Yee remains good law. I'm sorry? Assume Yee remains good law. That we don't overturn it. That the Supreme Court doesn't disturb that core holding. Would you still be arguing that under Yee there are some distinguishing factors, such as you have a shipper here as one of the defendants? Well, you have a shipper, but there's a question about whether or not the trial court's ruling preventing an action against the shipper. There's a question about whether that's valid. The shipper could have potential liability through the broker if the broker has any liability. You didn't differentiate between the shipper and the broker in your briefs. Do you agree that their liability rises and falls together? So if Yee applies to the broker, do you agree it also applies to the shipper? I believe it does ride together. You're into your rebuttal time if you want to save the remainder, Mr. Tooney. No, I'd like to save my rebuttal. Okay. Thank you. Mr. Lesperance, good morning. Can you hear us okay? I can. Thank you, Your Honor. And I do appreciate Lee Bantamy's remote appearance today. It's an honor to be in front of the court. I'm arguing primarily on the procedural issues here today. And it won't take long. But the primary concern I have here is if you affirm the district court decision, assuming Yee was upheld and not addressed by the court, then you're effectively overturning your own case law and preemption in relation to when is it appropriate to bring a motion to dismiss. And this issue on preemption comes up about once or twice every decade, it looks like, in the case law. And the court has been firm in that you cannot bring a motion, a 12B6 motion on a preemption defense because it has not been pled. And that's what happened here. We also have law that says there's a narrow and pragmatic exception to that. And that's when raising the affirmative defense. You don't need to go through a 12C because it's apparent on the face of the complaint. Why wouldn't this affirmative defense, namely preemption, be apparent from the face of the complaint, especially in light of Yee and Montgomery? That's a great question, Your Honor. And primarily because that case law deals with statute of limitations. When you look at the cases cited. But it wasn't limited to statute of limitations. It addressed affirmative defenses. Yeah, and statute of limitations is an affirmative defense. As is preemption. Yes, but statute of limitations are different. You look at a statute of limitation case, the plaintiff should know what the dates are in terms of the incident or occurrence. And you shouldn't have to wait until the defendant anticipates that  Whereas when you have preemption, the plaintiff does not know that that defense will be pled. So we can't anticipate it. The case law is very clear. You cannot anticipate the defenses. You're not required to do it. So when you look at a statute of limitations case, the plaintiff should know the dates. And when they assert those dates in the complaint, it is highly credible for the court to rely upon in that regard. Here we have no facts or circumstances from the defense. They have not submitted any evidence in this case on what their case is related to their defense. They just submitted argument. Briefs are not the pleadings. And so that's a very distinguishing argument. That's why I believe that that case law is limited to statute of limitations cases. But generally speaking. Why would it make a difference here? You know, What do you think we would glean from a defendant's pleadings? That might, that would bear on this decision beyond what we can see from the complaint. Well, it does matter in terms of the plaintiff being able to contest the facts and circumstances here. But it does matter in terms of the relationships. This case is important in terms of relationships. And so we would be able to conduct discovery to test that and confirm, do they have a broker license? Are they associated with motor carriers and whatnot? You could go into that and start contesting that evidence and say, no. Preemption does not exist. This under X, Y, Z law here, the F. And so we would be able to decide that.   But presumably we could decide it on. What under the procedural rule that you. You advocate. We would be able to decide the issue. Would you agree as soon as an answer is filed? Well, not necessarily as soon as it, but it does open the door then to, again, pursue discovery, at least request the district court. I guess the district court would have to take that into consideration. I can, you know, my experience. I've never seen a 12 C motion brought right after the answers file, but theoretically it is possible, but we, the plaintiff would have alternatives to respond. Unless the court has any other specific questions. I'll reserve the remainder of my argument for. Rebuttal. Okay. Thank you. Mr. Thank you. And you were arguing on behalf of ACE. Okay. May it please the court. Thank you. My name is Chris Wadley on behalf of ACE property and casualty insurance company. Your honors our position in this case is that the district court aired by declining to apply subsection two. A Wisconsin statute section six 28. Dot four six. And instead of holding ACE liable to pay interest on the full amount of the payment,   Tish houses initial policy on demand. Go ahead.  Subsection two talks about not being able to obtain a release. You just wanted to release from every claimant. Isn't that a little different? Well, subsection two talks about not being not knowing who is entitled to receive a payment. So there's, there's three elements of the portion that we're relying on here. One is. The carrier is unable to determine who's entitled to receive the payment. The carrier notifies the claimant of that inability and promises to pay upon resolution or determination of who's entitled. In this situation, all three of those elements are satisfied. We had four claimants. All involved in all severely injured in the same accident. Three of whom had damages standing alone that exceeded the entire policy limit. Therefore. The carrier in this situation, my client was unable to determine who was quote unquote entitled to the policy proceeds. Mr. And there was one claimant. That basically. Said that ACE had the right to dispense payment. Two. Whichever one of the claimants had provided enough proof of special damages to merit that. Well, that was certainly the position that my client took based on. So you're so. The. Client. And do you agree with that position? Well, it's, it's an argument based on the leveling case that the direct action statute does not require a pro rata distribution. I don't know that there's a case that definitively establishes that as a matter of law and Wisconsin law. I guess my question. Is the more direct than that. Do you agree or disagree with what your client said in that email? I, I mean, I agree that in that situation, if, if. If. ACE were to determine, make a determination on itself as to how to allocate the proceeds in the best interest of its insurance. That that would be appropriate under the circumstances. But the problem with that. Is that anytime you have a conflict of interest between an insured and the insurance carrier where the insurance carrier controls. The payment of the money. It could be subject to second guessings, especially if it leaves the insured exposed to additional liability. So you have a situation here where subsection two of the statute we think is plainly satisfied, given that. It's there's no, there's no statute. There's no case. There's no Wisconsin law. That says Mr. Tischauser was entitled to the full policy limit just because he's the first one. I think you could have stopped after there's no Wisconsin law period. On this particular provision. There isn't one way or the other. That's exactly right. Yeah. I mean, the, the, the. The cases that I've interpreted this have said, okay. In a single claimant case where. There's no question of liability. And there's no question that the damages exceed the policy limit. In that case, the carrier cannot say, I'm not going to pay the policy limit unless you give my. Ensure a release. So that's, that's Wisconsin case law. But the case law does not, does not interpret subsection two, which is the situation that we have here, where you have four severely injured claimants, three of whom have damages that exceed the limit standing alone. And there's simply no case statute, anything that says Mr. Tischauser is entitled to the $4 million simply because he demanded it first. Are you disputing that your client had to pay any interest at all? Or. Is your argument that it should have paid interest. Our argument is that it shouldn't have had to pay interest at all because it. How did you satisfy the requirement that your client had to offer in good faith? To promptly pay said claim. Upon determination of who is entitled to receive such payment. So if you look at the correspondence that was issued. And I would refer to document to fit to 15 dash three and the trial court record. And that's the, that's the email in which council. For ACE and the, and it's insurance. Proposes four different methods by which. The parties could agree on an allocation. And there's an offer to pay in there upon the determination. And those four. For is that you're waiting for the releases. Not that you're offering to pay. No, that, well, I, I, I would disagree with that, your honor. I think if you look at the emails, council is saying. We would like releases as part of this negotiated settlement. But there's not. There's no dispute as to how the $1 million should be split up.  what we don't have is a situation here where the four claimants said, okay, we agree. This is how the million dollars should be split up. There's no dispute as so entitlement is satisfied. Pay that, but we're not going to give your insurance a release. And if that was the situation and if a said, okay, we've all agreed on how the money should be split up. We're not going to pay it unless we get releases for our insurance. Then you would be in the contours area where that would be not a defense to owing interest. But we had a situation here where the claimants would not agree amongst themselves. Excuse me. How to, how to divvy up that money. And what ACE is saying is that, okay, well, as part of the process of figuring this out, we would like to get releases. And in fact, if you look at. I believe the document is. Council says, excuse me. Find it here. He basically says, look, I'm going to ask for releases. If it's in the cards, I would like, I would like releases for my insurance. But nowhere does he say a little bit stronger than in. Two 1530. He said, look. I'm going to ask for releases for my insurance.  So there's a million dollar policy. It's already down to about 999,000. And. The longer it takes to agree. Essentially. You're not going to have it to agree and to. Complete the releases and hold harmless. And again, your honor, there, there's nothing wrong with asking for a release as part of this process. I agree. There's nothing wrong with that. And it makes good business sense for your client. But that's not what the language of this is about. This is about. Paying interest. But you have to make a good faith. Offer to promptly pay. So. Two separate issues. Well, I, I think we did satisfy that. I think we did satisfy that by the correspondence that said we will pay. If there's a determination as to who is entitled to what portion of the proceeds. And there were four different methodologies that were presented as a way to get there. Now, if that had been resolved. And they said, we're still not going to pay you until we get. We're still not going to pay you. Unless and until we get releases. That would be an entirely different situation, but unless and until that initial determination of who's entitled to the. The proceeds. Subsection two kicks in and interest does not accrue. But I thought the. Your client. Was. Had stated that. Mr. Tish hours. How's there has already submitted a written settlement demand. Sufficient supporting documentation, demanding payment. Of the remaining available limits. So it's not that the insurer. It's not like your client wasn't able to determine that he was entitled to it. You're saying that you're. Your client was entitled. Wasn't able to determine who else might have been entitled to it.   But the thing is at a minimum, your client. Mr. Tish hours are provided sufficient information. I don't think there's any dispute about that. And that, that, that information indicated that he would probably exhaust the remaining limits available limits. And at that point, it seems as though. The. Wisconsin Supreme court's decision. In a. It's a con. Kind of kicks in. And, you know, we're not talking about whether or not the insurer has to, you know, satisfy some metaphysical certainty as to how everything should work out. I mean, from the language of statute, it seems like room. For the insurer to be able to make a decision. And then when the insurer knows. And is able to determine which your client claims it was. Proceeds should be released. So that presumes that Mr. Tish houser was entitled to 100% of the policy limits simply because he made the first demand. And there's not any case law that says just because he's the first one that got a lawyer and issued a demand means he's entitled to 100%. So I mean, if that's the, if that's the nature of Wisconsin law is that. We want to reward the first one to issue one of those demand letters. Then I suppose so be it, but that may be a reason to certify the question to Wisconsin Supreme court. We don't think that that's good public policy. We don't think that's an appropriate resolution because that leaves. The other three injured claimants completely without any insurance recovery or leaves the, the insured without any insurance proceeds to defend or identify with respect to those remaining three claims. So yes, we were aware that a demand had been made. We were aware that Mr. Tish houses injuries were sufficient to justify payment of the policy limit. But what distinguishes this case from continuance is that we have three other claimants. That were also injured three of whom also to the other two other ones also had injuries that by themselves exceeded the policy limit. Okay. Thank you, Mr.  Malik. Thank you, your honor. Good morning. Very pleased to court. I'm here on behalf of mode. He was decided in 2023 Montgomery was decided this year. I'm here to discuss the negligent hiring.   Judging Eve you are well aware, having been on both of those panels. I've heard these arguments before. It's our position that. Negligent hiring negligent. Super negligent selection. Claim. Has been properly dismissed. Because the FRA preempts that. Could your client. Ever be liable for negligent hiring. I know there were various. Theories of liability joint venture. Otherwise here. And you're arguing preemption. Should apply to all of them, but is there any theory under what your client. Could be liable. I have not seen any case. That would allow for, for that in terms of what the facts. Even the extreme, even if your client. Hired somebody or was the broker. And then the worst driver. For a company that it knew had. The worst drivers with the worst record who drove. Who had DUIs. I mean, come up with this. Theoretically judge. There is a, there is a scenario in which. Somebody could try. To pierce that, but. At least as far as the facts that have been played in this case. And the facts that we've seen both in Ian Montgomery. I don't, I don't see that. And the seventh circuit. And I think what we look at here. From the standpoint of preemption. In this particular case, we've got the negligence selection. We also have the agency and joint venture claims. Which are also negligence claims, which, which judge Griesbach also dismissed and which we agree with. Obviously entirely. Then we've got this, the alternative. Negligence claims.  Alternative methodology that the judge used. For failure to state a claim under Iqbal for the other. Individually pled negligence claims. So in our view. Judge Griesbach properly decided first, the negligence claims based on ye. And I'm looking at. The case language at page four 59. By recognizing common on exits claims coach courts would impose in the name. Of state law, a new and clear duty of care on brokers. Well, we have. That that's what these other two claims are. The joint venture claim. And the, the agency claim. And if you look at what. Judge Griesbach did in analyzing those claims and going through the complaint. And looking at whether they were even well played. Even judge Griesbach found that. As an alternative method. To getting the case dismissed. Those claims were not played well. What's your position on whether or not we should wait and see if the Supreme court grants cert. In either Montgomery or the tax case. Our position is that the court should not wait. It's good law. It's in this circuit. And there are two cases. That have held. That. The FRA preempts negligence claims against brokers. And there are two cases that have held that the FRA preempts  So it's our position that the court should not wait. If I could, if I could ask. So I take it that. If. The plaintiffs had brought a negligence claim against the driver's employer, employer. That that claim would survive. Would likely survive preemption. Yes. Okay. And I think it did judge. The plaintiffs. And so then if there is alleged. Some sort of joint venture or agency theory. And I understand you take issue with whether or not, whether something was sufficiently played here, but assume that. You know, that the plaintiffs could allege. That mode.  And, and even Cisco. You know, directly. Was able to dictate the working environment, the working restrictions and had someone onsite that was supervising Firebird's drivers. And the point of those two cases is that you have to have a      In that kind of factual scenario. Would you agree with me? That a vicarious liability claim or even a joint venture claim. Might survive preemption because it's basically. I mean, there's nothing to really distinguish that from direct negligence claim against the employer. I think judge at all boils down to control. Whether that control is adequately pledged. Number one. And for the joint venture theory, you have to share profit. No, I understand. But if we assume that for current purposes, That those claims were adequately pled. Then you would agree that we have a much closer call. I think so. I do agree, but my, our, our position is that a, they weren't properly pled and be in this fact scenario. We're so far down the line here. Mode hired Donnelly. And Donnelly subcontracted someone else. Who had a, who then further had a, their own driver. So we are way down the stream here. I understand. Thank you. Thank you, your honors. Thank you. Mr. Temple. Good morning, ma'am. Please. On behalf of Cisco corporation. And to echo my colleagues comments, we believe that the Dish court properly dismissed. All complaints. Penny against Cisco. Under both preemption and 12 B six, no plausible claim. We believe that under the analysis of growth. As well as under the analysis of ye. We believe that the preemption was properly applied to bar the torque claims pending against. Cisco corporation. Cisco corporation is, is a shipper in this case. Cisco had an agreement. A separate standalone agreement with mode. To broker loads. Mode then go out and find motor carriers. To ship the loads. And as the district court pointed out, the driver never actually got the load to pick up from Cisco. So in this case, from a plausibility standpoint, The. Joint venture claims as, as.  Judge Lee just pointed out. We're not properly planned. Although the allegations were incorporated into that account. So you have a count that alleges. Desperate treatment does not have a common contract. Does not have a common purpose and does not have. Sharing profits to meet the basic elements of. A joint venture. So that was properly dismissed. So I don't think there is a scenario where you can find a.  That is on. A plausibility. Basis. Going back to preemption under a row. I think rose stands for the possibility. That the effect of. These regulatory. Laws. And as we all know. Common laws, regulatory law. If that's affecting the price routes and services of a broker. Then it's preempted. So I don't think there is a scenario where you can find a. Or law being applied to a shipper. That would not be preempted by federal law. I don't think this court needs to revisit its decisions in. Montgomery. Based upon. What has already been flooded or argued. The decisions in ye. In Montgomery. I don't think this court needs to wait on whether or not the Supreme court. Grants, sir. Because from Cisco's position. I don't think this court needs to revisit its decisions in.  Based upon whether or not the Supreme court.   Because from Cisco's position, our position is unique. And there's not in those cases, your honor. So we would ask for a ruling on the issues. If there's no further questions, I think the poor first time. Thank you. Mr. Okay. Is there a rebuttal time left? It's just a couple of comments. Your honor. I think there's an issue here. The. Section one 45 or one sub one. The preemption clause. Does not itself. Say brokers. It's left. On set. So we think there's an actual. Issue here. As. As far as I'm concerned.  If the clause is susceptible to more than one plausible reading. Or it's generally. Ordinarily. Except the reading of the disfavors. Preemption. Second thing was that the. The. Second clause. One 45 or one C2. Did not say. Didn't list the word brokers in it. And that was something that the case. Mentioned as thinking that this was intentional by Congress. But it also that same statute did not include. Any of the other. Parties listed in the preemption clause. In other words, they left it open so that any person. Would have liability under that clause. If. If the facts. Justified that. Thank you, Mr. Time's up. Thank you. Mr. Thank you, your honor. Use the time to respond to ACEs arguments. As my client is the only client that's in both appeals. There was a lot of坐.  2 separate judgments. There was some arguments being made regarding, you know, there's no case law for the 1st person to write a demand, to get. The policy proceeds. There was also reference to second guessing fiduciary duties. And that's bad policy. This is a statutory right. This is a statutory right created by the Wisconsin assembly. That's not for this court or the Wisconsin Supreme court. To modify that is a decision made by the, the people of Wisconsin through the representative. So that should not be modified on those grounds. Additionally, there's constant reference to 4 claimants. But the record is very clear that only 1 demand was made. The 3 other claimants never made a demand at any point in time. The court should not base its ruling on theoretical facts. This is not a case where 4 demands were made at the same time. This is not a case of 4 demands being made within 30 days of each other. Those are different circumstances and different facts. This is 1 claimant who made a demand. Who the insurer acknowledged was entitled to payment based on the facts provided in proof of claim. And yet the insurer did not pay. They can have any type of. Equitable distribution they want within that 30 days, they can try to resolve it with the 4 of them. But once that 30 days hits, payment is due. If it is not paid, then interest is made. Interest is compensable. It's not punitive. This is just like any other sort of common law right for interest, like in a contract case. That's all the Wisconsin assembly's done here. And Ace made a choice. It wanted the release. And it wanted it really bad. And it wanted it from all 4 of them. And it chose to not pay the claim to hold out and get the settlement release. And under Wisconsin law and continence, which this case is held by and the court correctly ruled upon, my client is entitled to interest on that. Because he made a proper demand. All those elements were satisfied. Subdivision 2, there's constant reference about who is entitled to receive such payment. There's no reference to how much. Looking at the actual provision in subdivision 2, it states who is entitled to payment. Ace knew who was entitled to payment, Tischausen. Second of all, it knew who the other claimants were. All 4 of them were in the same vehicle. There's no dispute here. So to argue they didn't know who was entitled to the payment is baseless. They knew who it was. They just didn't want to make any specific determination on amounts. So unless the court has any questions, we just request that the court affirm the decision in the Tischausen v. Ace matter and reverse the district court in the Tischausen v. Mohen v.  Thank you. Thank you. Thanks to all counsel. The court will take the case under advisement. And we are going to take about a 10 minute break and we'll pick up with case number 3 when we're back. Thank you.